SCOTT N. SCHOOLS, SC SBN 9990
United States Attorney
JOANN M. SWANSON, CSBN 88143
Assistant United States Attorney
Chief, Civil Division
ILA C. DEISS, NY SBN 3052909
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
Telephone: (415) 436-7124
FAX: (415) 436-7169

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BIN YU,<br><br>          Plaintiff,<br><br>    v.<br><br>MICHAEL CHERTOFF, as Secretary of the Department of Homeland Security;<br>ROBERT S. MUELLER, Director of Federal Bureau of Investigation,<br><br>          Defendants. | No. C 07-5256 JF<br><br>**DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE; AND DECLARATION OF CATARINA ROBLES** |

**I. INTRODUCTION**

The plaintiff, Bin Yu filed a Form I-485 application to adjust his status to that of lawful permanent resident with the United States Citizenship and Immigration Services (USCIS) on May 1, 2005. The application is pending with USCIS. The Plaintiff filed a complaint with this Court on October 15, 2007, seeking an order directing USCIS to adjudicate his I-485 application. On November 16, 2007, this Court issued an Order to Show Cause (OSC) directing the defendants to show cause within sixty days why the relief prayed for in the complaint should not be granted. The defendants hereby submit their response to the OSC.

**II. FACTS**

Bin Yu is a native of China who filed an I-485 application to adjust his status to that of a

lawful permanent resident (LPR) on May 1, 2005 based on his marriage to Di Zhang, a United States citizen.  *See* Declaration of Catarina Robles (Robles Decl.) ¶ 16 (attached as Exh. A).  On June 9, 2005 a request for background security name check for Plaintiff was submitted electronically to the FBI by the United States Citizenship and Immigration Services (USCIS).  Id.  Due to the pendency of the name check processing by the FBI, the USCIS has not yet adjudicated the plaintiff's I-485 application.  Robles Decl. ¶ 16.

On October 15, 2007, the plaintiff filed the instant complaint, seeking an order from this Court compelling the defendants to immediately adjudicate his I-485 application.  Plaintiff alleges that defendants have violated the Administrative Procedures Act by unreasonably delaying the adjudication of his adjustment of status application, and that he is entitled to a writ of mandamus to compel the United States Citizenship and Immigration Services (USCIS) to adjudicate his application immediately pursuant to 28 U.S.C. § 1361.

Plaintiff's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Plaintiff is not entitled to mandamus relief under 28 U.S.C. § 1361 because he cannot show that he has a clear right to immediate adjudication or that the defendants have a clear, ministerial duty to act within a particular time frame.  Likewise, plaintiff is not entitled to relief under the Administrative Procedures Act (APA) because the APA exempts from judicial review actions that are "committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  Accordingly, the defendants seek dismissal of this action pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

### III.  STATUTORY AND REGULATORY FRAMEWORK

A.  ADJUSTMENT OF STATUS

Section 245 of the Immigration and Nationality Act, codified at 8 U.S.C. § 1255, authorizes the Secretary of the Department of Homeland Security ("Secretary")[1] to adjust to permanent residence status certain aliens who have been admitted into the United States.  Adjustment of

---

[1] On March 1, 2003, the Department of Homeland Security and its United States Citizenship and Immigration Services assumed responsibility for the adjustment program.  6 U.S.C. § 271(b).  Accordingly, the discretion formerly vested in the Attorney General is now vested in the Secretary of Homeland Security.  6 U.S.C. § 551(d).

1 status is committed to the Secretary's discretion as a matter of law.  Section 1255(a) expressly
2 provides:

> The status of an alien who was inspected and admitted or paroled into the United States . . .
> <u>may</u> be adjusted by the [Secretary], <u>in his discretion</u> and under such regulations as he may
> prescribe, to that of an alien lawfully admitted for permanent residence[.]

5 8 U.S.C. 1255(a) (emphasis added).

6     Significantly, the statute does not set forth any time frame in which a determination must be
7 made on an application to adjust status.  Nor is any time frame specified in the regulations setting
8 forth the procedures for aliens to apply to adjust status.  <u>See</u> 8 C.F.R. § 245 et. seq.
9     Before a decision is rendered on an alien's application to adjust status, U.S. Citizenship and
10 Immigration Services ("USCIS") conducts several forms of security and background checks to
11 ensure that the alien is eligible for the benefit sought and that he is not a risk to national security or
12 public safety.  Robles Decl. ¶ 3.  USCIS also conducts investigations into the bona fides of
13 petitions and applications that have been filed, in order to maintain the integrity of the application
14 process and to ensure that there is no fraud in the application process.  <u>See</u> 8 U.S.C. § 1105(a)
15 (authorizing "direct and continuous liaison with the Directors of the Federal Bureau of
16 Investigation [("FBI")] and the Central Intelligence Agency and with other internal security
17 officers of the Government for the purpose of obtaining and exchanging information for use in
18 enforcing the provisions of this chapter in the interest of the internal and border security of the
19 United States").  These checks currently include extensive checks of various law enforcement
20 databases, including the FBI.  <u>Id</u>.
21     The FBI's name check process is quite complex.  <u>See</u> <u>Eldeeb v. Chertoff, et al.</u>, 2007 WL
22 2209231, at *4 (M.D. Fla. July 30, 2007).  Name checks are performed at the request of a variety
23 of organizations, including the federal judiciary, friendly foreign police and intelligence agencies,
24 and state and local governments.  <u>Id.</u> at *3. When the FBI conducts a name check, the name is
25 checked against the FBI's Universal Index, in a four-stage process.  <u>Id.</u> at *3.  Generally, the FBI
26 employs a first-in, first-served protocol.  <u>Id.</u> at *4.  However, when an applicant's name check
27 requires a review of numerous FBI records and files, the name check may require additional time
28 until all responsive records are located and reviewed.  <u>Id.</u>  USCIS determines which name checks

Defendants' Response to Order to Show Cause
C07-5256 JF                                  3

are to be expedited. See USCIS Clarifies Criteria to Expedite FBI Name Check (attached as Exh. B). An expedited name check proceeds to the front of the queue, in front of others awaiting processing. Eldeeb, 2007 WL 2209231, at *5.

The FBI processed more than 3.4 million name checks during fiscal year 2006. Id. at *3. The FBI is working as expeditiously as possible to reduce the small percentage of immigration name checks for which a backlog exists. This backlog results from the vast number of requests the FBI receives from USCIS and other customers, as well as the requirement for enhanced security measures existing since September 11, 2001. Id. at *5. A variety of factors play into processing times, including "hits," common names, and expedited name checks. Id. at *4.

B. RELIEF AVAILABLE UNDER THE ADMINISTRATIVE PROCEDURE ACT AND THE MANDAMUS ACT

Judicial review under the APA, 5 U.S.C. § 701, et seq., is specifically precluded where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Agency action, as defined under the APA, also includes "a failure to act." 5 U.S.C. § 551(13). Under 5 U.S.C. § 706(1), a court may compel "agency action unlawfully withheld or unreasonably delayed." The elements of a claim under § 706(1) are the existence of a discrete, ministerial duty; a delay in carrying out that duty; and a determination that the delay was unlawful or unreasonable in light of prejudice to one of the parties. Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55 (2004); Rockbridge v. Lincoln, 449 F.2d 567, 569-73 (9th Cir. 1971).

The APA does not provide an independent jurisdictional basis. Califano v. Sanders, 430 U.S. 99, 107 (1977); Staacke v. U.S. Department of Labor, 841 F.2d 278, 282 (9th Cir. 1988). Rather, it merely provides the standards for reviewing agency action once jurisdiction is otherwise established. Staacke, 841 F.2d at 282. Similarly, the Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"), does not provide an independent basis for jurisdiction; rather, it only expands the range of remedies available in federal courts. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72 (1950).

Mandamus is an extraordinary remedy. See Cheney v. United States District Court for the District of Columbia, 542 U.S. 367, 392 (2004) (Stevens, J., concurring); Allied Chemical

Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980). The United States Supreme Court has stated that "[t]he common law writ of mandamus is intended to provide a remedy for a plaintiff only if . . . the defendant owes him a clear nondiscretionary duty." Heckler v. Ringer, 466 U.S. 602, 616 (1984). The Ninth Circuit has explained that

> [m]andamus . . . is available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available.

Kildare v. Saenz, 325 F.3d 1078, 1084 (9th Cir. 2003). Thus, "'mandamus does not lie to review the discretionary acts of officials.'" See Nova Stylings Inc. v. Ladd, 695 F.2d 1179, 1180 (9th Cir. 1983), quoting Nelson v. Kleppe, 457 F. Supp. 5, 8 (D. Idaho 1976).

### IV.  ANALYSIS

#### A.  ALL DEFENDANTS EXCEPT CHERTOFF SHOULD BE DISMISSED

Courts in this District have recognized that since March 1, 2003, the Department of Homeland Security has been the agency responsible for implementing the Immigration and Nationality Act. See 6 U.S.C. §§ 271(b)(5), 557. Accordingly, Defendant Robert S. Mueller should be dismissed. See Clayton v. Chertoff, et al., No. 07-cv-02781-CW, slip. op., at 13 (N.D. Cal. Oct 1, 2007); Konchitsky v. Chertoff, No. C-07-00294 RMW, 2007 WL 2070325, at *6 (N.D. Cal. July 13, 2007); Dmitriev v. Chertoff, No. C 06-7677 JW, 2007 WL 1319533, at *4 (N.D. Cal. May 4, 2007).

#### B.  RELIEF IS NOT AVAILABLE UNDER THE APA

##### 1.  Compelling Action By USCIS Would Necessarily Interfere With the FBI's Discretion

Numerous courts have recognized the FBI's discretion "in determining the timing for conducting the many name check requests that it receives and the manner in which to conduct those checks." Yan v. Mueller, No. H-07-0313, 2007 WL 1521732, at *6 (S.D. Tex. May 24, 2007) ; see also Takkallapalli v. Chertoff, 487 F. Supp. 2d 1094, 1099 (W.D. Mo. 2007) (stating that where delay was due to incomplete name check, "Defendants' conduct [was] sufficient to avoid judicial intervention."); Li v. Chertoff, 482 F. Supp. 2d 1172, 1179 (S.D. Cal. 2007) (recognizing that USCIS has wide discretion "in matters pertaining to the pace of the

1  adjudication of I-485 applications."); <u>Sozanski v. Chertoff, et al.</u>, No. 06-CV-0993 N, 2006 WL
2  4516968, at *1 (N.D. Tex. Dec. 11, 2006) (holding that federal district courts lack jurisdiction to
3  compel the FBI to perform name checks in adjustment of status cases).  Compelling USCIS to
4  process Plaintiff's application in a certain time frame would amount to compelling the FBI to
5  exercise its discretion in a certain manner.  Accordingly, Plaintiff essentially seeks to compel a
6  discretionary action, and relief is unavailable under the APA.
7         2.      <u>The Delay is Reasonable</u>
8       Even if the actions at issue were not discretionary, Plaintiff has failed to that the delay at issue
9  here is unreasonable.  To determine whether the delay is egregious, such that relief under the APA
10 is warranted, several circuits have adopted the six-part test first articulated in <u>Telecomm.
11 Research and Action Ctr. v. FCC</u>, 750 F.2d 70, 80 (D.C. Cir. 1984) ("TRAC").
12             a.      <u>A Rule of Reason Governs the Agency Decisions at Issue</u>
13      The first <u>TRAC</u> factor requires an agency to govern decisions with a rule of reason.  <u>TRAC</u>,
14 750 F.2d at 80.  Given the large volume of petitions and applications requiring adjudication, the
15 extensive background check that is required for national security and public safety, and the limited
16 resources available to it, the FBI is proceeding in an orderly fashion with the completion of name
17 checks in the order in which they are received.  See <u>Eldeeb v. Chertoff</u>, No. 07cv236-T-17EAJ,
18 2007 WL 2209231, at *2 (M.D. Fla. July 30, 2007).  Once the FBI name check in this case has
19 been completed, USCIS will promptly adjudicate Plaintiff's application.  Robles Decl. ¶ 16.
20 Further, USCIS regularly monitors the case to determine whether the name check remains
21 pending.  Robles Decl. ¶ 12.  Public safety requires USCIS to make certain that the background
22 checks have been completed and any outstanding issues resolved before it reaches a decision.  In
23 Plaintiff's case, this means that USCIS must await the results of the FBI name check before
24 reaching a decision on his I-485 application, and the FBI must be given time to perform an
25 accurate and thorough check.  Robles Decl. ¶ 13.  Moreover, the FBI's "first in, first out"
26 processing approach is a method that is "deserving of deference."  <u>Liberty Fund, Inc. v. Chao</u>, 394
27 F. Supp. 2d 105, 118 (D.D.C. 2005); see also <u>In re Barr Lab. Inc.</u>, 930 F.2d 72, 76 (D.C. Cir.
28 1991) ("The agency is in a unique and authoritative position to view its projects as a whole,

Defendants' Response to Order to Show Cause
C07-5256 JF                                                       6

estimate the prospects for each, and allocate its resources in the optimal way.").

     b.  There Is No Congressionally Mandated Timetable

 The second TRAC factor does not apply to the present case because there is neither a statutory requirement that the FBI process the name check nor one requiring USCIS to adjudicate the application within a certain amount of time. Contra Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, § 3001(g), 118 Stat. 3638 (2004) (requiring Government personnel security checks to be completed within a certain time frame). Additionally, Congress has not provided any clear guidelines indicating the speed at which the FBI and USCIS should conduct its adjudications. Congress has, however, required that USCIS conduct certain criminal and national security background checks to ensure eligibility for adjustment of status. See 8 U.S.C. §§ 1105(b)(1), 1255(a).

 Defendants acknowledge that Congress has observed that in most instances, applications for immigration benefits should not take more than 180 days to adjudicate. 8 U.S.C. § 1571. However, the statute expresses a "sense of Congress," and is not a mandate. Id. The language in § 1571 is merely precatory, and does not impose a deadline on Defendants. See Wright v. City of Roanoke Redevelopment and Housing, 479 U.S. 418, 432 (1987) (statute phrased in precatory terms does not create a substantive right); Orkin v. Taylor, 487 F.3d 734, 739 (9th Cir. 2007) ("'Sense of Congress' provisions are precatory provisions, which do not in themselves create individual rights, or, for that matter, any enforceable law.").

 Furthermore, the statute was enacted in 2000, prior to the events of September 11, 2001. See Immigration Services and Infrastructure Improvements Act of 2000, Pub. L. No. 106-313, 114 Stat. 1251 (enacted Oct. 17, 2000). Accordingly, it no longer provides a meaningful standard against which the Court can measure the delay at issue in this case. The events of September 11, 2001 marked a dramatic shift in issues involving national security. Courts have taken note of this change:

> It is well known that since September of 2001, the FBI's resources have been sorely taxed by the demands that have been made on it by the Administration. Legitimate national security concerns, intensified by the sophistication of some of the threats to the lives of people in this country, have forced federal agencies

> to be considerably more careful and thorough in their investigations than they were in the past. In short, there was a lot more work for the FBI to do and it had to be done a lot more carefully.

Razaq v. Poulos, No. C 06-2461 WDB, 2007 WL 61884, at *12 (N.D. Cal. Jan. 8, 2007).

Where there are no statutory guidelines, and in order to establish a "rule of reason," this Court must consider the factors that contribute to the backlogs that both the FBI and USCIS face. See, e.g., INS v. Miranda, 459 U.S. 14, 18 (1982) ("Both the number of the applications received by the INS and the need to investigate their validity may make it difficult for the agency to process an application as promptly as may be desirable"). In making a request for immigration benefits, "aliens only have those statutory rights granted by Congress," Marincas v. Lewis, 92 F.3d 195, 203 (3d Cir. 1996), and no federal statute or regulation prescribes a hard-and-fast deadline for acting upon immigration applications, such as the ones in this case, submitted to the USCIS. See Cordoba v. McElroy, 78 F. Supp. 2d 240, 244 (S.D.N.Y. 2000).

As discussed in Eldeeb, the FBI name check is a complex process. Eldeeb, 2007 WL 2209231, at *2. It involves a check of a variety of sources, and although most name checks are resolved in a matter of hours, approximately 32 percent require additional, manual review. Id. at *2. Of those remaining checks, 22 percent are returned within two months. Id. The FBI processes name checks chronologically, based on the date the name check is submitted. Id.

Before September 11, 2001, the FBI processed approximately 2.5 million name checks per year, checking only the "main" files. Id. at *3. In Fiscal Year 2006, the FBI processed over 3.4 million name checks. Id. In addition, the FBI began checking "reference" files. Id. This expansion of the name check procedures prompted USCIS, in December 2002 and January 2003, to resubmit 2.7 million name check requests, for those with pending applications for immigration benefits. Id. at *4. The FBI is currently still working to resolve 440,000 of these resubmitted name checks; because the FBI processes name checks chronologically, the processing of regular name checks has been delayed. Id. Name checks that exceed the two month window require personal attention of the processing agent. Id. at *5. The FBI currently processes approximately 340,000 name checks per year by hand. Id. Thus, it is evident that there are substantial factors contributing to the backlog.

    c.  The Impact of the Delay is Minimal in Comparison with the National Interest in Complete and Thorough Background Checks

The third <u>TRAC</u> factor is the delay's impact on human health, welfare, and economic harm to Plaintiff. This factor's analysis overlaps with the analysis of the fifth <u>TRAC</u> factor, the nature and extent of the interests prejudiced by the delay. <u>TRAC</u>, 750 F.2d at 80; <u>Liberty Fund</u>, 394 F. Supp. 2d at 118. Plaintiff may be inconvenienced by the delay in adjudication, but this individual interest cannot outweigh Defendants' interest in fully and accurately completing each name check. Security background checks for individuals seeking immigration benefits is a key component to our nation's national security. <u>See</u> The 9/11 Commission Report, 2004 WL 1634382 at 352 (July 22, 2004) (finding that, "had the immigration system set a higher bar for determining whether individuals are who or what they claim to be....it could have potentially have excluded, removed, or come into further contact with several hijackers who did not appear to meet the terms for admitting short-term visitors.").

In most cases, the adverse impact caused by the delay is not substantial. Applicants for adjustment of status who have pending applications may apply for and obtain employment authorization for the entire time the application is pending. Additionally, most applicants may also apply for and receive advance parole to enable them to travel abroad during the pendency of their application. Even when a more substantial impact is felt by an applicant, this impact, "is unlikely to rise to the level that would significantly change the Court's assessment of the unreasonableness of the delay in light of the importance of the agency's competing priorities." <u>Liberty Fund</u>, 394 F. Supp. 2d at 118. As the highest of priorities, "our national security requires that caution and thoroughness in these matters not be sacrificed for the sake of expediency." <u>Safadi v. Howard</u>, 466 F. Supp. 2d 696, 701 (E.D. Va. 2006). Although a delay in processing may have a negative impact, "nevertheless, in this post-9/11 context, agencies must have the freedom to carefully and thoroughly investigate these applications without judicial interference in their priorities." <u>Patil v. Mueller, et al.</u>, No. C 07cv71 JCC, 2007 WL 1302752 at *2 (E.D. Va. Apr. 30, 2007) (holding that the Court had no jurisdiction to issue a writ of mandamus due to legal and policy considerations). Thus, when balancing the agencies' interests in defending against threats

Defendants' Response to Order to Show Cause
C07-5256 JF         9

to national security against the Plaintiff's interest in adjudication, the interests of the nation must prevail.

          d.      The Effect of Expedition Would Intrude on Agency Discretion and Prejudice Other "First In Line" Applicants

The court in <u>Sze v. INS</u>, No. C 97-0569 SC, 1997 WL 446236, at *8 (N.D. Cal. Jul. 24, 1997), which applied the <u>TRAC</u> test to a similar complained-of delay in the immigration context, found the fourth factor to be the most persuasive. <u>Id.</u> at *8. The court, in refusing to grant relief under the APA, held that "the reasonableness of administrative delays must be judged in light of the resources available to the agency." <u>Id.</u> The court also recognized that by granting relief, it "would, at best, reorder the queue of applications, thereby leading to little net benefit." <u>Id.</u>; <u>see also</u> <u>Liberty Fund</u>, 394 F. Supp. 2d at 117 (deferring to agency's decision on how to handle competing applications for permanent labor certifications).

In <u>Liberty Fund</u>, the court refused to grant mandamus relief where it was requested solely due to the length of the delay in processing alien labor certifications. 394 F. Supp. 2d at 115. Applying the <u>TRAC</u> factors, the court held that without a statutory timetable governing agency action, the <u>TRAC</u> factor, "that weighs most heavily under the circumstances of the case is the fourth factor - the effect of granting relief on the agency's competing priorities." <u>Id.</u> at 116. The court reasoned that the agency's "first in, first out processing" was deserving of deference because any grant of relief to Plaintiffs would result in no net gain - Plaintiffs would move to the front of the queue at the expense of other similarly situated applicants. After examining the agency's priorities, growing workload, and good faith efforts to alleviate the delays, the court concluded that mandamus relief was not warranted. <u>Id.</u> at 119.

Just as in <u>Liberty Fund</u>, Plaintiff's argument of unreasonable delay in this case must also fail. Plaintiff asks this Court to find that USCIS has not adjudicated Plaintiff's I-485 application in a reasonable period of time. Plaintiff's legal arguments under Sections 555(b) and 706(1) of the APA fail because adjudication has not been unreasonably delayed. Contrary to Plaintiff's pleadings, the existence of administrative delays does not mean that such delays are unreasonable. Courts have noted that "the reasonableness of such delays must be judged in light of the resources

Defendants' Response to Order to Show Cause
C07-5256 JF                                      10

that Congress has supplied to the agency for the exercise of its functions, as well as the impact of the delays on the applicants' interests." Fraga v. Smith, 607 F. Supp. 517, 521 (D. Or. 1985) (citing Wright v. Califano, 587 F.2d 345, 353 (7th Cir. 1978)). Indeed, "[t]he passage of time alone is rarely enough to justify a court's intervention in the administrative process." Fraga, 607 F. Supp. at 521.

Similarly, the effect of expediting delayed agency action under the fourth TRAC factor would unquestionably impinge upon agency activities and responsibilities of a higher priority. Such an order would intrude on the agency's discretion and ability to fulfill its highest priority of safeguarding the nation. See Boim v. Quranic Literacy Institute, 291 F.3d 1000, 1027 (7th Cir. 2002) ("the government's interest in preventing terrorism is not only important but paramount"); see also Walters v. Reno, 145 F.3d 1032, 1043 (9th Cir. 1998) ("The Government's interests in the administration of its immigration laws and in preventing [immigration related] document fraud are likewise considerable.")

Delays in the processing of FBI name checks arise for a variety of reasons. First, USCIS is not the only agency that engages in the FBI name check program. Notably, the FBI and USCIS processes' do not occur in vacuums. Any requirement that the FBI or USCIS process Plaintiff's name check or application within a particular time limit will have the unfortunate side effect of slowing the processing for other applicants who are also awaiting action on their applications for immigration benefits.

The requests generally processed out-of-order are cases expedited by USCIS for specific health, welfare, or economic reasons. Absent these compelling reasons, moving some individuals to the front of the queue would simply move that group ahead of others who also had been waiting, resulting in no net gain in processing. See In re Barr Lab., 930 F.2d at 75; Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1101 (D.C. Cir. 2003). Furthermore, ordering Plaintiff's case to the front of the line sets the precedent that the more litigious applicants are most likely to move to the top of the pile at the expense of other applicants that have waited even longer, but may not have the resources to file suit. Manzoor v. Chertoff, 472 F. Supp 2d 801, 809 (E.D. Va. 2007); see also Yan, 2007 WL 1521732 at *7 (holding that a grant of review of

Plaintiff's claims would only, "encourage other applicants to file suit to receive expedited treatment rather than wait their turn in line.").

Moreover, the courts have been cautioned against "engrafting their own notions of proper procedures upon agencies entrusted with substantive functions by Congress." Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 525 (1978). Here, where "there are no allegations of bad faith, a dilatory attitude, or a lack of evenhandedness on the part of the agency, the reasonableness of the delays in terms of the legislatively imposed 'reasonable dispatch' duty must be judged in light of the resources that Congress has supplied, as well as the impact of the delays on the applicants' interests." Wright, 587 F.2d at 353. The complexity of agency investigations, as well as the extent that the individual applicants contributed to delays, also enter into a court's deliberations. See Saleh v. Ridge, 367 F. Supp. 2d 508, 512 (S.D.N.Y. 2005). An agency's good faith efforts to address delays militate against a finding of unreasonableness. See Wright, 587 F.2d at 345.

    e.  The Agencies are Exercising Every Effort to Address the Delay

The sixth and last TRAC factor provides that a court need not find impropriety to hold that an agency action is unreasonably delayed. Conversely, "the good faith of the agency in addressing the delay weighs against mandamus." Liberty Fund, 394 F. Supp. 2d at 120. Here, the delay is due to the pendency of Plaintiff's FBI name check. See Robles Decl. ¶ 16. As discussed above, the FBI is processing the name checks to the best of its ability, and USCIS is monitoring the case to ensure that once the name check is complete, USCIS can complete adjudication. Thus, balancing the TRAC factors demonstrates the reasonableness of the Government's actions.

In addition, Plaintiff has failed to show that USCIS will refuse to adjudicate his application once the FBI completes the requisite name check. See Saleh, 367 F. Supp. 2d at 513; see also Eldeeb, 2007 WL 209231, at *17 (finding that the plaintiff had failed to show that USCIS was refusing to act on his application). On the contrary, the FBI and USCIS are taking active steps towards completing the background checks for adjudication of her application. Specifically, USCIS is making every effort to complete adjudication as soon as the name check is completed. Robles Decl. ¶ 16.

Many courts have refused to grant relief under the APA, even when naturalization or other immigration applications were pending for significant time periods.  See Saleh, 367 F. Supp. 2d at 513 (finding five-year delay not in violation of APA in part in light of volume of applications); Espin v. Gantner, 381 F. Supp. 2d 261, 266 (S.D.N.Y. 2005) (over three-year delay not unreasonable because of government's limited resources and substantial caseload); Alkenani v. Barrows, 356 F. Supp. 2d 652, 656-57 (N.D. Tex. 2005) (no unreasonable delay found in naturalization context because of need to wait for completion of FBI investigation).  Just as in these cases, Plaintiff in the present case insists that this Court find an unreasonable delay based solely on the amount of  time passed since receipt of her application.  However, the law requires a more in-depth analysis for mandamus relief under the APA.  A review of the six TRAC factors shows that Defendants have not unreasonably delayed actions pertaining to Plaintiff's adjustment of status application.

### C. MANDAMUS IS NOT AVAILABLE BECAUSE PLAINTIFF'S CLAIM IS NOT CLEAR AND CERTAIN

Mandamus is reserved for those situations in which the Plaintiff's claim is clear and certain. Kildare, 325 F.3d at 1078.   Here, because Plaintiff has failed to establish that action on his application has been unreasonably delayed, he has failed to show that his claim is so clear and certain that mandamus is justified.  Accordingly, the Court should decline to issue a writ of mandamus.

### V.  CONCLUSION

For the foregoing reasons, Defendants respectfully ask this Court to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and/or for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated:   December 18, 2007                                    Respectfully submitted,

                      SCOTT N. SCHOOLS
                      United States Attorney


                      _____/s/_____
                      ILA C. DEISS
                      Assistant United States Attorney
                      Attorneys for Defendants