JUSTIN X. WANG (CSB #166183)
PEGGY A. SHIH (CSB #197545)
**BAUGHMAN & WANG**
111 Pine Street, Suite 1350
San Francisco, California 94111
Telephone: (415) 576-9923
Facsimile: (415) 576-9929

Attorneys for Plaintiff
Bin YU

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Bin YU<br><br>Plaintiff<br><br>vs.<br><br>MICHAEL CHERTOFF, Secretary of the Department of Homeland Security;<br>ROBERT S. MUELLER, Director of Federal Bureau of Investigation<br><br>Defendants. | Case No.: c 07-5256 JF<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE** |

## I. INTRODUCTION

On November 19, 2007 this Court directed the Defendants to show cause within 60 days of the service of the complaint as to why the relief sought by Plaintiff under the Administrative Procedures Act and Mandamus Act should not be granted. The Defendants filed their answer to the Order to Show Cause on December 19, 2007. Plaintiff herein files a response to the matters raised in Defendants' answer.

## STATEMENT OF FACTS

On May 1, 2005, Plaintiff Bin Yu's U.S. citizen wife filed a Form I-130 Petition for Alien Relative on his behalf and Plaintiff concurrently filed a Form I-485 Application to Register Permanent Residence or to Adjust Status with the USCIS. Plaintiff's Original Complaint, Exhibit 1. The Form I-130 was approved by USCIS on October 18, 2005. Plaintiff's Original Complaint, Exhibit 2. Plaintiff was interviewed on his Form I-485 application by the San Jose

Office in August 2005. At this time, the FBI name check appears to be the only reason for the delay in adjudication of Plaintiff's application. Plaintiff's I-485 application has now remained pending for more than two years and eight months from the date of filing.

## ARGUMENT

Plaintiff is entitled to relief under 28 U.S.C. §1361 and the Administrative Procedures Act. Under 28 U.S.C. § 1361, district courts have original jurisdiction to compel an officer of the United States to perform his duty. While the duty is often mandatory or ministerial, the duty may also be in the exercise of discretion. Although an officer may have discretion to adjudicate an application, it has a non-discretionary duty to process the application. Failure to perform such duties can be contrary to law for mandamus to lie. *Davis v. Shultz*, 453, F.2d 497, 502 (3rd Cir. 1971), *Naporano Metal and Iron Company v. Secretary of Labor,* 529 F.2d 537, 541 (3d Cir. 1976). Jurisdiction exists to challenge a U.S. official's authority to "take or fail to taken an action as opposed to a decision taken within . . . discretion." *Patel v. Reno*, 134 F.3d 929, 931-932 (9th Cir. 1997). Plaintiff is not challenging a decision within the discretion of the officer, but challenging Defendants failure to make a decision on his adjustment of status application, including completion of the FBI's name check. It is a distinction between the duty to take some discretionary action as opposed to the actual discretionary decision itself.

Courts have also found jurisdiction under 28 U.S.C. §1331 and the Administrative Procedures Act (APA). *Saleh v. Ridge*, 367 F. Supp.2d 50, 5128 (S.D.N.Y. 2005); *Wang v. Reno*, No. 01 CIV. 1698 (BSJ), 2001 WL1150343, at *1 (S.D.N.Y. Sept. 27, 2001). The APA provides a cause of action when the government unreasonably delays action or fails to act altogether. 5 U.S.C. §§ 555(b) and 706(1). The APA states that federal courts can "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Agency action also includes the "failure to act." 5 U.S.C. § 551(13). The APA imposes a clear duty on Defendants to act on Plaintiff's application and to complete the name check. Administrative agencies do not have discretion to "avoid discharging the duties that Congress intended them to perform." *Yu v. Brown*, 36 F. Supp. 2d 922, 931 (D.N.M. 1999). In addition, a general timing provision for agencies is provided within the APA at 5 U.S.C. § 555(b), which states that agency

action should be concluded within a reasonable time. *See Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir. 1999).

Courts have concluded that subject matter jurisdiction exists over whether Defendants have unreasonably delayed in performing their non-discretionary duty to adjudicate I-485 applications. *Valenzuela v. Kehl*, No. 05-1764, 2006 U.S. Dist. LEXIS 61054 (N.D. Tex. 2006); *Razaq v. Poulous*, No. C-06-2461 WDB, 2007 WL 61844, at *3-4 (N.D. Cal. Jan. 8, 2007); *Wu v. Chertoff*, No. C-06-7880 SI, 2007 WL 1223858, *3 (N.D. Cal. 2007); *Gelfer v. Chertoff*, No. C-06-06724 WHA, 2007 WL 902382, *2 (N.D. Cal.2007); *Singh v. Still*, 470 F. Supp. 2d 1067 (N.D. Cal. 2007); *Liu v. Chertoff*, No. S-06-2808 RRB EFB,*10 (E.D. Cal. August 22, 2007).

Mandamus relief is appropriate when: 1) the plaintiff has a clear right to the relief requested; 2) the defendant has a clear duty to act; and 3) no other adequate remedy is available. *Johnson v. Reilly*, 349 F.3d 1149, 1154 (9th Cir. 2003); *Lowry v. Barnhart*, 329 F.3d 1019, 1021 (9th Cir. 2003). In other words, a writ of mandamus "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear non-discretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). Plaintiff has a clear right to have his adjustment of status application adjudicated, the Defendants have a non-discretionary duty to provide that relief, and Plaintiff has no other adequate remedy available.

Section 245 of the INA and 8 U.S.C. § 1255(a) is the statute governing adjustment of status applications:

> The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification under subparagraph (A)(iii), (A)(iv), (B)(ii), or (B)(iii) of section 204(a)(1) or 3. may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

It has been found that the INA establishes a clear right to the relief for adjustment of status applicants. *See Yu*, 36 F. Supp. 2d at 930-932; *Ahmed v. DHS*, 328 F.3d 383 (7th Cir. 2003); *Paunescu v. INS*, 76 F. Supp. 2d 896, 901 (N.D. Ill. 1999). Defendants have not provided

Case No.: 07-00733 RS
PLAINTIFF'S RESPONSE TO DEFENDANTS' RESPONSE TO OSC    F:\Peggy\immigration\mandamus\YU, Bin\answer to Defendant's OSC.wpd

3

any evidence contrary to Plaintiff's claim to have met all the statutory requirements for adjustment of status. Plaintiff's Original Complaint, Exhibits 1-2. Thus, Plaintiff has a clear and certain claim for adjustment of status.

Defendants have a non-discretionary duty to adjudicate Plaintiff's adjustment of status application. *See Yu*, 36 F. Supp. 2d at 925; *Agbemaple v. INS*, No. 97 C 8547, 1998 WL 292441 (N.D. Ill. 1998); *Elkhatib v. Butler*, No. 04-222407, 2006 WL 2333566 (S.D. Fla. 2005); *Aboushaban v. Mueller*, No. C 07-1280 BZ, 2006 WL 3041086 (N.D. Cal. Oct. 24, 2006). Defendants have a duty to simply process these applications. *Gelfer v. Chertoff*, No. C-06-06724 WHA, 2007 WL 902382 (N.D. Cal. March 22, 2007). The APA also imposes a clear duty on Defendants to act on Plaintiff's application. §§ 555(b) and 706(1).

Plaintiff also states an APA claim against the FBI. An agency's mandatory duty to act may be expressed in a single statute or from several Congressional enactments which, read together, clearly imply a mandatory duty. *Kaplan v. Chertoff*, No. C 06-5304, 2007 U.S. Dist. LEXIS 22935, (E.D. Pa. 2007). Precise provisions directly deal with the FBI duties, including 8 U.S.C. § 1252(a)(2)(B), 28 U.S.C. § 534(a)(4), and 8 U.S.C. §§ 1105(b)(1) and 1101(3). Nevertheless, the *Kaplan* court, after careful analysis of several congressional schemes, including Pub. L No. 101-515, 104 Stat, 2101, 2112(1990) and 8 CFR §§ 316.4, 334.2, and 72 Fed. Reg. 4888-01(proposed Feb. 1, 2007), held that Congress has, by implication, imposed on the FBI a mandatory duty to complete the background checks. As a result, the APA requires that the FBI complete the criminal background checks in a reasonable amount of time.

The CIS has failed to adjudicate Plaintiff's adjustment of status application within a reasonable time. Reasonableness of the delay is a factual determination to be determined on a case by case basis. *Yu*, 36 F.Supp. 2d at 953. One can look to internal operating procedures or what the average adjudication time is for adjustment of status applications, such as processing

reports. The CIS' own processing time for I-485 adjustment applications at the San Jose Office as of December 15, 2007 is six months (See attached). Congress, under the Immigration Services and Infrastructure Improvements Act of 2000, expects that immigration benefit applications be completed within 180 days. 8 U.S.C. § 1571 ("It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days . . .").

Six factors may also assist the Court in determining what is an unreasonable delay. They include 1) time agencies take to make decisions must be governed by the rule of reason; 2) where Congress has provided a timetable or other indication of speed it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; 3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; 4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing authority; 5) the court should also take into account the nature and extent of the interests prejudiced by delay; and 6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed. *Yu,* 36 F. Supp. 2d at 934. Furthermore, the source of the delay is another factor in determining whether a delay is unreasonable, such as the complexity of the investigation and the defendant's own participation in the delay. *Saleh,* 367 F. Supp. 2d. at 511-512; *Bartoloni v. Ashcroft*, 226 F. Supp. 2d 350, 354 (D. Conn. 2002).

Under the first *TRAC* factor regarding the timing of decisions by the rule of reason, the processing of the I-485 application and FBI name checks must be looked at in relation to the particulars of Plaintiff's case. In the instant case, Defendants have provided no evidence to explain the reason for the delay in the adjudication of Plaintiff's adjustment of status application or whether it has taken any action at all. Defendants have provided no explanation for the delay in Plaintiff's name check since the initial request in June 2005 or what accounts for the delay in

its completion. In a mandamus case decided in this district, where a FBI name check caused a delay in processing, the Court granted summary judgment compelling the defendants to adjudicate the I-485 application. *Singh v. Still,* 470 F. Supp. 2d 1067, 1068 (N.D. Cal. 2007). In *Singh*, the Court found that the CIS and the FBI had a duty to process the applications and the name checks within a reasonable time, regardless of who was responsible for the delay. *Singh*, 470 F. Supp. 2d at 1068. Moreover, *Singh* asserted that "mere invocation of national security is not enough to render agency delay reasonable per se." 470 F.Supp.2d at 1069.

Under the second *TRAC* factor, although there is no statutory directive from Congress regarding a specific time for adjudication of the I-485 applications or completion of the name check, reasonable time can be determined through other methods, including the use of *TRAC* factors. Guidelines can also be gleaned via the USCIS' and FBI's own average processing times, which provide an indication of the speed with which to determine reasonableness. The APA also provides a timing provision which states that agency action should be concluded within a reasonable time. *See Forest Guardians v. Babbitt*, 174 F.3d 1178 (10th Cir. 1999); *Haidari v. Frazier*, 2006 U.S. Dist. LEXIS 89177, *9-11 (D. Minn. 2006). It has been determined that an agency must act within a reasonable time despite the fact that no specific time appears on the face of this statute. *Yu*, 36 F. Supp. 2d at 932; *Agbemaple v. Ins.*, No. 97 C 8547, 1998 WL 292441, at *2 (N.D. Ill. 1998). Lack of a specified deadline within the statute does not lessen Defendants' duty to Plaintiff to adjudicate his application. *Razaq v. Poulous*, No. C-06-2461 WDB, 2007 WL 61844, at *4 (N.D. Cal. Jan. 8, 2007)("The fact that neither the statute nor regulations establish a specific deadline does not change the character of the duty itself . . . Congress expected the executive branch to receive applications of this kind and then to 'adjudicate' them to decision."). Allowing the Defendant FBI an unlimited amount of time to process a name check request would be contrary to the "reasonable time" frame mandated under 5 U.S.C. § 555(b) and 5 U.S.C. §

Case No.: 07-00733 RS
PLAINTIFF'S RESPONSE TO DEFENDANTS' RESPONSE TO OSC    F:\Peggy\immigration\mandamus\YU, Bin\answer to Defendant's OSC.wpd

6

706(1) and thus could ultimately negate the Defendant FBI's duty under 8 U.S.C. § 1105. *Dong v. Chertoff*, 2007 WL 2601107, at *11 (N.D. Cal. Sept. 6, 2007); *Gelfer v. Chertoft*, 2007 WL 902382, at *2 (N.D. Cal. March 22, 2007).

The third *TRAC* factor considers delays with impacts on human health or welfare, as opposed to those economic in nature, to be less tolerable. This coincides with the fifth TRAC factor, which weighs the nature and extent of interests prejudiced by the delay. No evidence has been provided to indicate there is a security concern in relation to Plaintiff's case. Security concerns are important but not as a guise for an agency to fail to carry out the duties required of them. In this case, human welfare is implicated through the impairment of Plaintiff's right to have his application adjudicated. *See, e.g. Singh*, 470 F. Supp. 2d at 1070. Plaintiff has been adversely impacted by being deprived of a decision for more than two years and eight months; by being unable to plan or pursue a future course of action in the United States due to the pendency of the application, by repeatedly applying and paying for extensions of employment authorization and being further delayed in their opportunity to apply for naturalization.

The effect of expediting the action on agency activities of a higher/competing authority is the fourth *TRAC* factor. As a practical matter, expediting the delayed action on immigrant petitions and adjustment of status applications has routinely occurred in the past without seemingly to impinge on the agency's activities of a higher or competing authority. In fact, many mandamus cases in this district have been dismissed because the cases have been successfully expedited by the Defendants, reflecting that no higher or competing authority was compromised when the court compelled the agency to act. Moreover, if security concerns are a top priority, it would follow that name checks should be completed as soon as expediently possible rather than be pending indefinitely. Without the relief of mandamus, the FBI could withhold or fail to complete a name check request indefinitely. *See Dong*, 2007 WL 2601107, at *12 (these plaintiffs

1  have more than "waited their turn," having seen millions of later-filed applications processed
2  before theirs). Plaintiff is simply requesting that the Court intervene to ensure established
3  procedures are timely being followed without any unreasonable delay.
4
5      The final *TRAC* factor states that the Court does not need to find impropriety in order to
6  find that agency action is unreasonably delayed. Indeed, the fact that Plaintiff's case has been
7  pending for over two years and eight months is sufficient under this factor, even absent a specific
8  motivation to delay by the Defendants. Courts within this district have found delays alone
9  sufficient to warrant mandamus relief. *Aboushaban v. Mueller*, No. C 06-1280 BZ, 2006 WL
10 3041086 (N.D. Cal. Oct. 24, 2006); *Singh v. Still,* 470 F. Supp. 2d 1067 (N.D. Cal. 2007); *Gelfer*
11 *v. Chertoff*, No. C-06-06724 WHA, 2007 WL 902382 (N.D. Cal. March 22, 2007)(more than two
12
13 year delay to be unreasonable as a matter of law). Courts in other districts have found cases where
14 adjustment of status applications have been pending for over 6 to 24 months unreasonable. *See*
15 *Liu v. Chertoff*, No. S-06-2808 RRB EFB,*18 (E.D. Cal. August 22, 2007)("[D]elay of more than
16 two-and-a-half years is unreasonable under the specific circumstances because there is no
17 evidence in the record demonstrating that the delay is attributable to Plaintiff nor is there any
18 particularized evidence in the record sufficiently explaining the reasons for the extended
19
20 delay")(copy attached); *Galvez v. Howerton*, 503 F.Supp. 35, 39 (C.D. Cal.1980); *Paunescu*, 76 F.
21 Supp. 2d at 901-02; *Agbemaple*, 1998 WL 292441; *Yu*, 36 F. Supp. 2d at 931-32; *Elkhatib*, 2006
22 WL 2333566. *See also Salehian v. Novak*, No. 06-459, 2006 U.S. Dist. LEXIS 77028 (D. Conn.
23 2006) (application pending for more than two years); *Tjin-A-Tam v. United States Dep't of*
24 *Homeland Sec.*, No. 05-23339, 2007 U.S. Dist. LEXIS 17994 (D. Fla. 2007) (application pending
25
26 for more than three years); *But see Zahani v. Neufeld*, No. 05-1857, 2006 U.S. Dist. LEXIS 56416
27 (M.D. Fla. 2006) (application pending for more than three years); *Chaudry v. Chertoff*, No. 06-
28 1303, 2006 U.S. Dist. LEXIS 66842 (D. Minn. 2006) (application pending for 17 months); *Jabr v.*

*Chertoff*, No. 06-543, 2006 U.S. Dist. LEXIS 84588 (D. Mo. 2006) (applications pending for more than three years); *Mustafa v. Pasquerell*, No. 05-0658, 2006 U.S. Dist. LEXIS 8047 (W.D. Tex. 2006) (applications pending more than four years); *Safadi v. Howard*, 466 F. Supp. 2d 696 (E.D. Va. 2006) (applications pending for more than four years).

Thus, the balancing of the *TRAC* factors, as well as the specific facts of this case, indicate the Defendants have delayed unreasonably in adjudicating Plaintiff's application. Plaintiff filed his I-485 application on May 1, 2005. After Plaintiff's interview on August 2005, two years and four months have passed with no further action taken on Plaintiff's case.

Mandamus relief in adjustment of status cases, such as this one, can be granted due solely to the length of the delay. Plaintiff filed his case more than two years and eight months ago, and the Defendants have a duty to complete the adjudication of Plaintiff's application within a reasonable time. Even without a statutory timetable, reasonableness of delay can be determined through various means, including the application of the *TRAC* factors and consideration of the reasons for the delay, complexity of the case, and the agency's own average processing times. Plaintiff has complied with the requirements for eligibility under the statute. Mandamus relief is warranted here because there is no indication of good faith efforts by Defendants to alleviate the delay. Defendants have not proffered any evidence demonstrating that Plaintiff is not eligible for adjustment of status or that national security concerns are implicated specifically in relation to Plaintiff's case. Absent the court's order, the application is likely to continue pending without decision, and thus, Plaintiff has no other adequate remedy available. The Mandamus Act and the APA provide a check on both the CIS and FBI for their failure to fulfill their duties, namely their failure to act within a reasonable time.

Because Plaintiff has a clear right to the relief requested, Defendants have a clear duty to adjudicate Plaintiff's application, and no other adequate remedy is available, the relief of

mandamus is warranted. For these reasons, the Defendants have failed to show cause why the relief Plaintiff seeks should not be granted.

## CONCLUSION

For the reasons set forth herein, Plaintiff requests that the Court enter an order requiring Defendants to complete the security check on Plaintiff's application for adjustment of status and requiring the San Jose Sub Office to process the cases to conclusion.

DATED: January 7, 2008                                    Respectfully submitted,


                                                          _____/s/_____

                                                          Justin X. Wang
                                                          Attorney for Plaintiff



Search 
Advanced Search

| Services & Benefits | Immigration Forms | Laws & Regulations | About USCIS | Education & Resources | Press Room |

Print This Page    Back

# U.S. Citizenship and Immigration Services
# San Jose CA Processing Dates
# Posted December 14, 2007

The processing times shown below are a tool for our customers to gauge our current processing times. When applications and petitions are completed within our target timeframes, that goal will be shown in the data display.

The processing times shown below are for applications that have just been completed. If you have just filed your application, these timeframes may not reflect how long your application will take to be completed. We encourage you to check this page periodically before inquiring about your case. The processing times are updated monthly.

USCIS has received a significant increase in the number of applications filed. In July and August, nearly 2.5 million applications and petitions of all types were received. This compares to 1.2 million applications and petitions received in the same time period last year. This fiscal year, we received 1.4 million applications for naturalization; nearly double the volume we received the year before. The agency is working to improve processes and focus increased resources, including hiring approximately 1,500 new employees, to address this workload.

As a result, average processing times for certain application types may be longer. In particular, naturalization applications filed after June 1, 2007 may take approximately 16-18 months to process.

We offer a variety of services after you file. For example, for most kinds of cases you can check the status of your case online.

For more information about when and how to contact us, whether your case is outside our processing time or if there are other issues, please see our customer guide –

Case Services - How do I... know what kind of services are available to me after I file my application or petition?

District Office Processing Dates for **San Jose CA** Posted December 14, 2007

| Form | Form Name | Processing Timeframe: |
|---|---|---|
| I-131 | Application for Travel Documents | 3 Months |
| I-485 | Application to Register Permanent Residence or Adjust Status | 6 Months |
| I-600 | Petition to Classify Orphan as an Immediate Relative | July 12, 2007 |
| I-600A | Application for Advance Processing of Orphan Petition | July 12, 2007 |
| I-765 | Application for Employment Authorization | 11 Weeks |
| N-400 | Application for Naturalization | March 25, 2007 |
| N-600 | Application for Certification of Citizenship | November 28, 2006 |

Print This Page    Back